**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TY INC.**, a Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:18-cv-2726 |
| v. | ) | |
| | ) | Judge Charles R. Norgle |
| **ESQUIRE LICENSING LLC**, a New | ) | |
| York limited liability company; | ) | Magistrate Judge Young B. Kim |
| **ESQUIRE FOOTWEAR LLC**, a New | ) | |
| York limited liability company; and | ) | |
| **ISAAC SAADA**, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF TY INC.'S MOTION FOR ENTRY OF
<u>FINAL JUDGMENT AGAINST ALL DEFENDANTS</u>**

Respectfully submitted by,

Gregory J. Scandaglia
Therese L. Tully
Joseph R. Swee
SCANDAGLIA RYAN LLP
55 E. Monroe Street, Suite 3440
Chicago, IL 60603
Phone: (312) 580-2020
Fax: (312) 782-3806
Email: gscandaglia@scandagliaryan.com
ttully@scandagliaryan.com
jswee@scandagliaryan.com

*Attorneys for Plaintiff Ty Inc.*

## TABLE OF CONTENTS

Pages

INTRODUCTION .................................................................. 1

STATEMENT OF FACTS ........................................................ 1

1. Ty's Intellectual Property and the Licensing Agreement ........................ 1

2. The Relationship Between Esquire Licensing and Esquire Footwear .................................................................. 2

3. The Relationship Between the Esquire Defendants and Saada ............... 4

4. The Defendants' Scheme to Breach Their Contractual Obligations and Exploit Ty's Intellectual Property ....................................... 4

5. Improper Sales Made During the Third and Fourth Quarters of 2017 Without Paying Any Royalty ........................................... 5

6. Infringing Sales Made During 2018 ......................................... 6

7. The Defendants' Efforts to Conceal the Improper Sales ........................ 6

8. Procedural History ........................................................ 7

ARGUMENT ..................................................................... 8

1. Damages .................................................................. 8

   a. Esquire Licensing and Esquire Footwear .................................. 9

   b. Saada .................................................................. 10

      i. Ty is entitled to recover the amount of the unpaid royalties and interest owed under the Licensing Agreement. ....................................................... 10

      ii. Ty is entitled to recover the amount of the Esquire Defendants' net infringing sales during 2018 .................. 11

2. Petition for Attorneys' Fees ............................................... 13

   a. The hourly rates charged by Ty's attorneys are reasonable ......... 14

   b. The number of hours worked by Ty's attorneys are reasonable ............................................................... 15

3. Bill of Costs ...................................................................................... 18

    a. Filing Fee – $400.00 ....................................................... 19

    b. Fees for Service of Summons and Subpoenas – $2,515.00 .......... 19

    c. Fees for Exemplification and Copying – $4,200.24 ..................... 20

4. Form of Judgment ...................................................................... 21

CONCLUSION ............................................................................................. 21

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Pages**

*4SEMO.Com, Inc. v. S. Illinois Storm Shelters, Inc.*, 2018 WL 692947 (S.D. Ill.
    Feb. 2, 2018) ................................................................................................................    12

*Am. Massage Therapy Ass'n v. Folkers*, 2006 WL 8459840 (N.D. Ill. Apr. 13,
    2006) ...........................................................................................................................    13, 14

*Am. Safety Cas. Ins. Co. v. City of Waukegan*, 2011 WL 6378817 (N.D. Ill. Dec.
    20, 2011) .....................................................................................................................    19

*Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999
    (N.D. Ill. 2008) .............................................................................................................    12

*Black & Decker Corp. v. Positec USA Inc.*, 2015 WL 5612340 (N.D. Ill. Sept. 22,
    2015) ...........................................................................................................................    11, 12

*City of Red Bud v. Stines*, 2020 IL App (5th) 190294-U ..................................................    11

*Demitro v. Gen. Motors Acceptance Corp.*, 902 N.E.2d 1163 (Ill. App. Ct. 2009) .........    13, 14

*Eagle Services Corp. v. H2O Indus. Services, Inc.*, 2012 WL 3255606 (N.D. Ind.
    Aug. 8, 2012) ...............................................................................................................    13

*Golden v. City of Chicago*, 2015 WL 12839131 (N.D. Ill. Aug. 27, 2015)......................    14

*Hangzhou Aoshuang E-Commerce Co. v. 008Fashion*, 336 F.R.D. 154 (N.D. Ill.
    2020) ...........................................................................................................................    14

*Hillmann v. City of Chicago*, 2017 WL 3521098 (N.D. Ill. Aug. 16, 2017) ...................    20

*Lamarr v. Montgomery Lynch & Associates, Inc.*, 2019 WL 912171 (N.D. Ind.
    Feb. 25, 2019) .............................................................................................................    16

*Oleksy v. Gen. Elec. Co.*, 2016 WL 7217725 (N.D. Ill. Dec. 12, 2016)...........................    19

*Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931 (7th Cir. 1989) .....................................    11

*Schmalz v. Vill. of N. Riverside*, 2018 WL 11198063 (N.D. Ill. Dec. 17, 2018) .............    16

*Sterling Nat'l Bank v. Block*, 2019 WL 5085715 (N.D. Ill. Oct. 10, 2019).....................    19

*Top Tobacco, L.P. v. N. Atl. Operating Co., Inc.*, 2007 WL 2688452 (N.D. Ill.
    Sept. 6, 2007) ..............................................................................................................    14

*WMS Gaming Inc. v. WPC Productions Ltd.*, 542 F.3d 601 (7th Cir. 2008)....................    12

**Statutes**

15 U.S.C. § 1117.................................................................................................... 11

17 U.S.C. § 504..................................................................................................... 11

28 C.F.R. § 0.114.................................................................................................. 19

28 U.S.C. § 1920.................................................................................................. 19, 20

Plaintiff Ty Inc. ("Ty") respectfully requests that the Court enter final judgment against Defendant Esquire Licensing LLC ("Esquire Licensing"), Defendant Esquire Footwear LLC ("Esquire Footwear"), and Defendant Isaac Saada ("Saada") for the reasons stated below.

## INTRODUCTION

The Court has entered default judgments against all defendants in this action. (April 7, 2021 Order, Dkt. No. 191; October 15, 2021 Order, Dkt. No. 200.) The Court has directed Ty to file "a motion as to the amount and form of the final judgment against all defendants, including a fee petition and a bill of costs." (October 15, 2021 Order, Dkt. No. 200.) In accordance with that direction, Ty now brings this Motion to address those issues and request entry of final judgment against all defendants.

## STATEMENT OF FACTS

### 1. Ty's Intellectual Property and the Licensing Agreement

Ty is a leading manufacturer of plush animal toys and other related products. (Second Amended Complaint ("SAC"), Dkt. No. 102, ¶ 10.) In approximately 1993, Ty developed a line of plush toys called Beanie Babies. (*Id.* ¶ 20.) Since then, Beanie Babies have been among the top selling toys and collectibles in the United States, with more than one billion units sold. (*Id.*) Over time, Ty has expanded its product line to include a variety of different plush toys, clothing, and other products. (*Id.* ¶ 22.) In connection with the Beanie Babies toy line and other products, Ty owns trademarks that have been registered with the United States Patent and Trademark Office[1]

---

[1] As pertinent here, those trademarks include the marks: (1) BEANIES™, Reg. No. 3,081,059; (2) TY®, Reg. No. 2,118,114; (3) the Ty Heart Logo®, Reg. No. 1,722,141; (4) THE BEANIE BOOS COLLECTION™, Reg. No. 5,541,177; (5) BEANIE BOOS™, Reg. No. 5,396,599; and (6) BEANIE BOOS™ (with stylized letters), Reg. No. 5,396,600. (SAC, Dkt. No. 102, ¶ 22; Lundeen Dec., Dkt. No. 186-1, ¶ 6.)

1

(*id.* ¶¶ 10, 22-25) and copyrights that have been registered with the United States Copyright Office[2] (*id.* ¶¶ 26-27). (*See also* Declaration of Tania Lundeen ("Lundeen Dec."), Dkt. No. 186-1, ¶¶ 6, 7.)

In 2015, Ty and Esquire Licensing executed a Consumer Product License Agreement (the "Licensing Agreement"). (SAC, Dkt. No. 102, ¶¶ 30-31.) Through that agreement, Ty granted Esquire Licensing a non-exclusive license to make and sell certain footwear (including slippers and flip flops) and other products incorporating artwork and other creative elements associated with the trademarks TY®, the Ty Heart Logo®, BEANIE BOOS™, and THE BEANIE BOOS COLLECTION™ as well as various copyrights associated with the BEANIE BOOS™ product line. (*Id.* ¶¶ 34-35.) In return, Esquire Licensing was obligated, among other things, to pay a royalty of 12% on all sales of products incorporating Ty's intellectual property. (*Id.* ¶ 37.) The other contractual obligations that are pertinent to Ty's claims are addressed below.

### 2. The Relationship Between Esquire Licensing and Esquire Footwear

Although only Ty and Esquire Licensing formally executed the Licensing Agreement, Esquire Licensing and Esquire Footwear acted as one business enterprise. (*Id.* ¶¶ 189-90.) At all pertinent times, Esquire Licensing and Esquire Footwear were owned, managed, and controlled by the same owners and officers. (*Id.* ¶¶ 191-92.) They did not follow separate corporate formalities (*id.* ¶ 198) and they did not maintain separate bank accounts or financial affairs (*id.* ¶

---

[2] As pertinent here, those copyrights include: (1) "Beanie Boos Dotty 37189," Reg. No. VAu 1-233-754; (2) "Beanie Boos Fantasia 36158," Reg. No. VA 1-979-191; (3) "37220 Beanie Boos Gilbert," Reg. No. VAu 1-282-309; (4) "Beanie Boos Kiki 37190," Reg. No. VAu 1-233-752; (5) "Beanie Boos Glamour 36085," Reg. No. VA 1-975-493; (6) "#C9934 Black & White Cat Boo," Reg. No. VAu 1-051-911; (7) "Beanie Boos PATCHES 37177," Reg. No. VA 2-128-177; (8) "Beanie Boos Tasha 36151," Reg. No. VA 1-979-002; (9) "36852 Beanie Boos PIXY," Reg. No. VA 2-126-588; (10) "Beanie Boos Sophie 36189," Reg. No. VA 1-979-182; (11) "Beanie Boos Rainbow 36043," Reg. No. VA 1-975-512; (12) "Beanie Boos Duke 36125," Reg. No. VA 1-941-061; (13) "Beanie Boos Oscar 36148," Reg. No. VA 1-979-013; (14) "Beanie Boos Buddies Safari Giraffe C9786," Reg. No. VAu 1-030-837; and (15) "Beanie Boos Slush 36006," Reg. No. VA 1-694-710. (SAC, Dkt. No. 102, ¶ 27; Lundeen Dec., Dkt. No. 186-1, ¶ 7.)

202; *see also id.* ¶¶ 201-09).  Esquire Licensing and Esquire Footwear operated out of the same offices in New York and shared the same telephone numbers and email addresses.  (*Id.* ¶¶ 193-97.)

Esquire Licensing would enter into licensing agreements with companies such as Ty and then Esquire Footwear would operate as though it ***directly*** held the license that had been granted to Esquire Licensing.  (*Id.* ¶¶ 203-15.)  In fact, Esquire Footwear publicly held itself out as a licensee of Ty on its own website and in magazine articles, press releases, and marketing materials.  (*Id.* ¶¶ 211-14.)  Esquire Licensing did not have any meaningful business operations of its own and did not serve any function other than acting as a shell entity to contract with Ty.  (*E.g.*, *id.* ¶ 201.)

Esquire Footwear was responsible for all of the operations conducted pursuant to the Licensing Agreement into which Esquire Licensing entered.  Esquire Footwear paid the employees who performed work in connection with the development, manufacturing, marketing, or sale of products under the Licensing Agreement.  (*Id.* ¶ 203.)  Esquire Footwear paid the expenses incurred to develop, manufacture, market, or sell the products.  (*Id.* ¶¶ 204-05.)  Esquire Footwear obtained the funding necessary to cover those expenses and granted security interests in the products to lenders.  (*Id.* ¶¶ 148-59, 210.)  Esquire Footwear received payments made by customers who purchased the products.  (*Id.* ¶¶ 206-07.)  And Esquire Footwear is the only defendant that made any royalty payments to Ty under the Licensing Agreement.  (*Id.* ¶¶ 208-09.)  Esquire Licensing and Esquire Footwear thus did not have separate corporate existences and instead operated as one business enterprise.

### 3.  The Relationship Between the Esquire Defendants and Saada

From 2014 through early 2017, Esquire Licensing and Esquire Footwear (collectively, the "Esquire Defendants") were controlled by two of their four members, Lee Cohen and Saada.  (*Id.* ¶¶ 217-18.)  By mid-2017, though, Cohen stepped back and Saada alone assumed complete control over the Esquire Defendants.  (*Id.* ¶¶ 220-21.)  He was the final decision-maker who actively directed all their development, manufacturing, and sales efforts.  (*Id.* ¶¶ 6-7, 216-78).  He alone formulated the scheme described below to violate Ty's rights and exercised his control over the Esquire Defendants to force them to participate.  (*Id.* ¶ 5.)  At the same time, Saada prevented the Esquire Defendants from following corporate formalities, including keeping appropriate corporate records (*id.* ¶¶ 198, 222, 236-40), and left the Esquire Defendants severely undercapitalized by taking funds out of the companies for his own and others' personal purposes (*id.* ¶¶ 235-41, 247; *see also id.* ¶¶ 222-35, 249).  Saada thus completely dominated the Esquire Defendants during the time when the conduct giving rise to Ty's claims occurred.

### 4.  The Defendants' Scheme to Breach Their Contractual Obligations and Exploit Ty's Intellectual Property

From 2015 through the second quarter of 2017, the defendants made and sold millions of dollars of products incorporating Ty's intellectual property.  (*See* Lundeen Dec., Dkt. No. 186-1, ¶ 27.)  In early 2017, Ty and the defendants began negotiations regarding a potential new contract because the Licensing Agreement was set to expire at the end of the year.  (SAC, Dkt. No. 102, ¶ 4.)  However, it became clear by mid-2017 that the parties would not reach agreement on that new deal.  (*Id.* ¶¶ 4-5.)  The resulting loss of the Ty license would have significant negative ramifications for the defendants, which already were in a precarious financial state.  (*Id.* ¶ 5.)  Angry at the breakdown in negotiations, Saada created a scheme to exploit Ty's intellectual property for his personal financial benefit.  (*Id.* ¶¶ 5-6, 242.)  The primary thrust of his plan was

4

that the Esquire Defendants would continue to make and sell products incorporating Ty's intellectual property but would not pay Ty any royalties. (*Id.* ¶¶ 6, 242.)

Throughout the second half of 2017, Saada and the Esquire Defendants executed the scheme by making and selling products without paying royalties. (*Id.* ¶¶ 55-85, 243.) But they did not stop there. After the Licensing Agreement expired on December 31, 2017, Saada used the Esquire Defendants to make and sell millions of dollars of new products incorporating Ty's intellectual property during early 2018. (*Id.* ¶¶ 86-133.) Saada and the Esquire Defendants never paid Ty a penny in royalties for any of these sales. (*Id.* ¶¶ 62, 81, 127.)

### 5. Improper Sales Made During the Third and Fourth Quarters of 2017 Without Paying Any Royalty

During the third and fourth quarters of 2017, while the Licensing Agreement still was in effect, the defendants sold $5,121,141.01 of products incorporating Ty's intellectual property. (Lundeen Dec., Dkt. No. 186-1, ¶ 33.[3]) Consistent with their scheme, however, the defendants never made a royalty payment for those sales. (SAC, Dkt. No. 102, ¶¶ 61-62, 80-81; Lundeen Dec., Dkt. No. 186-1, ¶¶ 38-39.) Concerned about the lack of payment, Ty repeatedly emailed and called the defendants to seek information regarding the overdue royalties. (SAC, Dkt. No. 102, ¶ 98.) As planned, though, they lied to and misled Ty by concocting false explanations for the delays and falsely promising payment would be made promptly. (*Id.* ¶¶ 99-102, 255-61.) To this day, no royalty payment has been made for the third or fourth quarters of 2017. (*Id.* ¶¶ 62, 81, 287; Lundeen Dec., Dkt. No. 186-1, ¶¶ 38-39.)

---

[3] As explained in Ms. Lundeen's declaration, this total is supported by: (1) the royalty report for the third quarter of 2017, which is the last document in Exhibit D to her declaration; (2) the invoices dated between October 1, 2017 and December 31, 2017 that are contained in Exhibit E to her declaration; and (3) a Target purchase order report, which is Exhibit F to her declaration. (Dkt. Nos. 187, 188, 189.) Additional declarations regarding the authenticity of the invoices and purchase order report are filed at Dkt. Nos. 186-2, 186-3, 186-4.

### 6. Infringing Sales Made During 2018

Under its express terms, the Licensing Agreement expired on December 31, 2017, leaving the defendants without any right to use Ty's intellectual property. (SAC, Dkt. No. 102, ¶ 32.) However, the defendants went on to manufacture, market, and sell products incorporating Ty's intellectual property during the first several months of 2018. (*Id.* ¶ 104.) Saada personally caused the Esquire Defendants to engage in that conduct through his domination of the corporate entities and he also personally participated in those sales. (*Id.* ¶¶ 262-77.) The net sales of these infringing products during 2018 totaled $2,841,383.31. (Lundeen Dec., Dkt. No. 186-1, ¶ 35.[4])

### 7. The Defendants' Efforts to Conceal the Improper Sales

The Licensing Agreement imposed several obligations designed to ensure Ty's access to information about the Esquire Defendants' performance. Of particular significance, the Esquire Defendants were required to: (1) provide Ty with a quarterly report stating how many products had been sold and what the resulting royalty was (SAC, Dkt. No. 102, ¶¶ 67-68; Exhibit A to Lundeen Dec. ("Lundeen Dec. Ex. A"), Licensing Agreement, Dkt. No. 186-1, ¶ 4(b) at p. 9-10, ¶ 6(a) at p. 12-13); (2) maintain appropriate books and records, including sales documentation (SAC, Dkt. No. 102, ¶ 174; Lundeen Dec. Ex. A, Dkt. No. 186-1, ¶ 7(a) at p. 14-15); and (3) permit Ty to audit those books and records (SAC, Dkt. No. 102, ¶ 181; Lundeen Dec. Ex. A, Dkt. No. 186-1, ¶ 7(a) at p. 14-15). Each of these obligations was essential to Ty's ability to enforce its contractual rights, ensure it was paid the amount owed, and prevent misuse of its valuable intellectual property. (SAC, Dkt. No. 102, ¶¶ 69-71, 175, 182.)

---

[4] As explained in Ms. Lundeen's declaration, this total is supported by the invoices dated on or after January 1, 2018 that are contained in Exhibit E to her declaration. (*See also* Declaration of William Riggin, Dkt. No. 186-2; Declaration of Scott Adler, Dkt. No. 186-3.)

In violation of these contractual obligations, the defendants engaged in a calculated campaign to hide the improper sales by depriving Ty of information. (*Id.* ¶ 165.) First, the defendants did not provide any royalty report to Ty for sales made during the fourth quarter of 2017. (*Id.* ¶ 170.) Second, the defendants improperly denied Ty's request in 2018 to conduct an audit, which would have allowed Ty to determine the amount of sales that had been made but not reported to Ty. (*Id.* ¶¶ 185-87.) Finally, and most concerningly, the defendants did not produce in discovery and appear to have lost or destroyed their own invoices and other sales documentation for millions of dollars of sales made during the fourth quarter of 2017 and 2018. (*Id.* ¶¶ 177-80.) This disinformation effort forced Ty to expend significant resources to identify the improper sales and assert its legal rights. (*Id.* ¶¶ 75, 168, 178.)

In discovery in this litigation, Esquire Licensing finally produced some invoices for sales made during the fourth quarter of 2017 and 2018. However, the production had large gaps, causing Ty to question whether it was complete and to subpoena some of the Esquire Defendants' customers and lenders. Through these efforts, Ty uncovered millions of dollars in additional improper sales that the defendants had made during the fourth quarter of 2017 and 2018 but had not disclosed to Ty. As a result, and despite the defendants' misconduct, the evidence obtained during discovery reasonably establishes the amount of the improper sales (and thus Ty's damages).

### 8.  Procedural History

On April 16, 2018, Ty filed its initial complaint in this case. (Complaint, Dkt. No. 1.) On April 24, 2018, Ty's initial complaint was served on Esquire Licensing. (Affidavit of Service, Dkt. No. 7.) On April 5, 2019, Ty filed its First Amended Complaint, which added two new defendants – Esquire Footwear and Saada – and new claims based on, among other things, trademark and copyright infringement. (First Amended Complaint, Dkt. No. 70.) Between April

5, 2019 and April 18, 2019, Ty's First Amended Complaint was served on Esquire Licensing through the CM/ECF System and on Esquire Footwear (Affidavit of Service, Dkt. No. 76) and Saada (Affidavit of Service, Dkt. No. 77) through personal service.  On June 21, 2019, Ty filed its Second Amended Complaint, which was served on all Defendants through the CM/ECF system. (SAC, Dkt. No. 102.)

On January 14, 2021, the Court entered the default of Esquire Licensing and Esquire Footwear.  (Dkt. No. 176.)  On April 6, 2021, Ty moved for default judgment against Esquire Licensing and Esquire Footwear under Federal Rule of Civil Procedure 55.  (Dkt. No. 186.)  The Court granted that motion and entered default judgments against Esquire Licensing and Esquire Footwear on April 7, 2021.  (Dkt. No. 191.)

On March 22, 2021, Ty moved for sanctions against Saada and requested, *inter alia*, the entry of default judgment against him.  (Dkt. No. 183.)  On May 3, 2021, Judge Young B. Kim issued a memorandum report and recommendation recommending that Ty's Motion for Sanctions be granted and default judgment be entered against Saada.  (Dkt. No. 193.)  On October 15, 2021, this Court adopted Judge Kim's findings and recommendations, granted Ty's motion, and entered default judgment against Saada.  (Dkt. No. 200.)

## ARGUMENT

### 1.  Damages

In its October 15th Order, the Court directed Ty to address the amount of the final judgment in this matter.  (Dkt. No. 200.)  For the reasons set forth herein, Ty respectfully requests that the Court award damages against each defendant in the amount of (a) *$3,889,211.70* plus (b) any ***additional interest*** that accrues under the Licensing Agreement between November 11, 2021 (*i.e.*, the date on which this Motion was filed) and the entry of final judgment.  That additional interest

accrues at a constant rate of $9,202.15 per month until a final judgment is entered and thus can be computed by the Court without undue difficulty when entering a final judgment.

    a.  Esquire Licensing and Esquire Footwear

In its Motion for Default Judgment, Ty established that it is entitled to recover two categories of damages from Esquire Licensing and Esquire Footwear. The first are damages caused by the failure to pay royalties and interest accrued thereon as required by the Licensing Agreement. (Ty's Motion for Default Judgment, Dkt. No. 186 at 17.) The second are damages caused by the violations of Ty's intellectual property rights. (*Id.* at 17-19.) Collectively, Ty sought to recover damages "in the amount of $3,823,015.60 and an amount equal to any unpaid interest that accrues between April 2, 2021 and the date on which judgment is entered." (*Id.* at 22.) Because the Court already granted Ty's Motion for Default Judgment (Dkt. No. 191), the only issue that remains with respect to Ty's damages against Esquire Licensing and Esquire Footwear is the quantification of the additional unpaid interest accrued between April 2, 2021 and the date of judgment.

The unpaid balance due to Ty as of April 2, 2021 was $613,476.60. (Lundeen Dec., Dkt. No. 186-1, ¶¶ 42-46; *see also* Ty's Motion for Default Judgment, Dkt. No. 186 at 11, 17.) Interest accrued on that amount at a rate of 1.5% per month under the Licensing Agreement. (Ty's Motion for Default Judgment, Dkt. No. 186 at 11, 17; *see also* Lundeen Dec., Dkt. No. 186-1, ¶¶ 42-46.) That means interest accrued at a rate of $9,202.15 per month.[5] Between April 2, 2021 and the filing of this Motion on November 11, 2021, the amount of additional monthly interest that accrued was $66,196.10.

---

[5] This calculation is performed by multiplying the outstanding balance ($613,476.60) by the monthly interest rate (0.015). That is the same formula reflected in Ms. Lundeen's declaration. (*See* Lundeen Dec., Dkt. No. 186-1, ¶ 46.)

For these reasons, Ty is entitled to damages against Esquire Footwear and Esquire Licensing in the amount of $3,889,211.70 plus any additional interest that accrues (at a rate of $9,202.15 per month) between the filing of this Motion and the entry of final judgment.

b. Saada

Saada is liable for the same two categories of damages in the same amounts as the Esquire Defendants.

*First*, as alleged in Ty's Second Amended Complaint, and established by the Court's default judgment order (Dkt. No. 200), Saada is liable for the breach of contract claim asserted in Count I of the Second Amended Complaint because he is the alter ego of Esquire Licensing and Esquire Footwear. As explained below, the damages attributable to that claim are measured by the amount of the unpaid royalties and interest owed under the Licensing Agreement. That amount totals $1,047,828.39 as of November 11, 2021.

*Second*, the Court's default judgment order (Dkt. No. 200) establishes that Saada is liable for the intellectual property violations alleged in Counts II through VIII of the Second Amended Complaint because (1) he is the alter ego of Esquire Licensing and Esquire Footwear and (2) he personally participated in the violations. As explained below, the damages attributable to those claims are measured by the amount of the defendants' net infringing sales made during 2018. That amount totals $2,841,383.31.

i. Ty is entitled to recover the amount of the unpaid royalties and interest owed under the Licensing Agreement.

In Count I, Ty asserts claims for breach of contract against Saada for violations of the Licensing Agreement as the alter ego of the Esquire Defendants. For the purposes of damages, the only pertinent breaches are the failure to pay royalties for the third and fourth quarters of 2017 and the failure to pay the interest that accrued under the Licensing Agreement. For those breaches,

Ty is entitled to recover damages in the amount needed to place Ty in the position that it would have been in if the Licensing Agreement had been performed (*i.e.*, if all of the royalties and interest owed to Ty had been paid). *City of Red Bud v. Stines*, 2020 IL App (5th) 190294-U, ¶ 34. The amount of the unpaid royalties is $614,537.04. (Lundeen Dec., Dkt. No. 186-1, ¶ 34.) As of November 11, 2021, the amount of the unpaid interest is $433,291.35. (*See* Lundeen Dec., Dkt. No. 186-1, ¶ 47 (establishing the amount was $367,095.25 as of April 2, 2021); *infra* pp. 9-10 (explaining that $66,196.10 in additional interest accrued between April 2, 2021 and November 11, 2021).) Therefore, under Count I, Ty is entitled to recover damages in the amount of $1,047,828.39 and an additional amount equal to the unpaid interest that accrues between November 11, 2021 and the date on which judgment is entered.

> ii. Ty is entitled to recover the amount of the Esquire Defendants' net infringing sales during 2018.

In Counts II through VIII, Ty asserts intellectual property claims related to the infringing sales that the defendants made during 2018. Each of those claims independently would support an award of damages. Ty's infringement claims also would support an award of statutory damages, and its counterfeiting claims would support a trebling of Ty's damages. 15 U.S.C. § 1117(a)-(c); 17 U.S.C. § 504(b)-(c). However, Ty will limit the scope of the relief it seeks in this Motion. Thus, on Counts II through VIII, Ty only seeks to recover damages against Saada under the Lanham Act and the Copyright Act in the amount of the net infringing sales.

Under those two statutes, a plaintiff is entitled to recover the profits made on all infringing sales. *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 940-41 (7th Cir. 1989); *Black & Decker Corp. v. Positec USA Inc.*, 2015 WL 5612340, at *13 (N.D. Ill. Sept. 22, 2015). In calculating these profits, "the plaintiff is required to prove [the] defendant's sales only." *Black & Decker Corp.*, 2015 WL 5612340, at *13 (cleaned up). After that, the defendant bears the burden of

11

establishing "all elements of cost or deduction claimed." *Id.*; *see also WMS Gaming Inc. v. WPC Productions Ltd.*, 542 F.3d 601, 609 (7th Cir. 2008). If the defendant does not carry that burden, then "the plaintiff's entitlement to profits . . . is equal to the infringer's gross sales." *Black & Decker Corp.*, 2015 WL 5612340, at *13; *see also 4SEMO.Com, Inc. v. S. Illinois Storm Shelters, Inc.*, 2018 WL 692947, at *17 (S.D. Ill. Feb. 2, 2018), *aff'd in part, rev'd in part on other grounds and remanded*, 939 F.3d 905 (7th Cir. 2019) (awarding revenue from infringing sales); *Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1008 (N.D. Ill. 2008) (same).

Here, Saada engaged in a willful scheme to exploit Ty's intellectual property for his own benefit and in deliberate violation of the law. To perpetuate that scheme, Saada engaged in fraudulent conduct to deceive Ty and thus prevent Ty from asserting its legal rights to stop the improper sales. As a result, the defendants sold $2,841,383.31 in infringing products. (Lundeen Dec., Dkt. No. 186-1, ¶ 19.)

There is no evidence before the Court regarding the defendants' costs to manufacture and sell the infringing products. Under the governing legal standard, that alone is dispositive. Ty's entitlement to profits is equal to the defendants' net sales. *Black & Decker Corp.*, 2015 WL 5612340, at *13.

The appropriateness of that award is confirmed by the discovery conducted in this case. While the defendants still were represented by counsel, Ty requested several categories of documents that covered expense records documenting the costs incurred by the defendants to manufacture and sell (1) products incorporating Ty's intellectual property during the term of the Licensing Agreement and (2) the infringing products. In response, the defendants collectively produced only a few hundred pages of invoices, receipts, and other expense records. However, many of those records were in a foreign language, most did not reflect the purpose for which they

were incurred, and none was traceable to the infringing products.[6] The record developed during discovery thus could not support any reduction for the costs of the infringing products.[7] Therefore, the Court should award the defendants' net sales of infringing products (*i.e.*, $2,841,383.31) in damages to Ty.

For these reasons, Ty's contract and intellectual property claims collectively entitle Ty to damages against Saada in the amount of $3,889,211.70 plus any additional interest that accrues (at a rate of $9,202.15 per month) between the filing of this Motion and the entry of final judgment. As noted above, this is the same as the damages award that Ty seeks against Esquire Licensing and Esquire Footwear.

### 2. Petition for Attorneys' Fees

The default judgments entered against the defendants establish that Ty is entitled to recover its attorneys' fees in this action under the Lanham Act, the Copyright Act and the Illinois Consumer Fraud and Deceptive Business Practices Act. In its October 15th Order, the Court stated that Ty may file a fee petition seeking those fees. (October 15th Order, Dkt. No. 200.) To determine whether a requested award of attorneys' fees is reasonable, courts typically multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Am. Massage Therapy Ass'n v. Folkers*, 2006 WL 8459840, at *4 (N.D. Ill. Apr. 13, 2006) (Lanham Act); *Eagle Services Corp. v. H2O Indus. Services, Inc.*, 2012 WL 3255606, at *2 (N.D. Ind. Aug. 8, 2012) (Copyright Act); *Demitro v. Gen. Motors Acceptance Corp.*, 902 N.E.2d 1163, 1170 (Ill. App. Ct.

---

[6] Before withdrawing, the defendants' counsel represented that they produced all responsive expense records, including all documents they had related to the infringing products' cost. Thus, the lack of competent evidence of costs is not attributable to the withdrawal of the defendants' counsel.

[7] Even if the Court were to credit the scattershot documentation (which is not in the record now before the Court) and were to assume that all of the purported expenses related to the infringing products (even though there is no such proof), the expenses would still be less than 10% of the defendants' net sales of infringing products (which were $2,841,383.31).

2009) (Illinois Consumer Fraud and Deceptive Business Practices Act). In accordance with that approach, Ty now seeks an award of ***$685,862.50*** in attorneys' fees. (*See* Ex. 2-A, Fee Petition Summary.)

      a.   <u>The hourly rates charged by Ty's attorneys are reasonable.</u>

In assessing an award of attorneys' fees, the Court must determine whether the attorneys' billing rates are reasonable. *Am. Massage Therapy Ass'n v. Folkers*, 2006 WL 8459840, at *5 (N.D. Ill. Apr. 13, 2006). The "best evidence" of reasonableness is the market rate for an attorney's work. *Hangzhou Aoshuang E-Commerce Co. v. 008Fashion*, 336 F.R.D. 154, 160 (N.D. Ill. 2020). "Generally, an attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate." *Am. Massage Therapy Ass'n*, 2006 WL 8459840, at *5 (internal quotation marks and citation omitted); *see also Golden v. City of Chicago*, 2015 WL 12839131, at *2 (N.D. Ill. Aug. 27, 2015). Once the party seeking to recover its fees has proven its attorneys' actual billing rates, the burden shifts to the opposing party to prove that the requested rates are unreasonable. *Top Tobacco, L.P. v. N. Atl. Operating Co., Inc.*, 2007 WL 2688452, at *2 (N.D. Ill. Sept. 6, 2007).

The attorneys' fees sought in this Motion were incurred for work performed by three attorneys (Gregory Scandaglia, Therese Tully, and Joseph Swee) and one paralegal (Denise Waters) at the law firm of Scandaglia Ryan LLP ("Scandaglia Ryan"). The firm primarily represents large and sophisticated corporate and individual clients in complex commercial litigation. (Ex. 1, Declaration of Therese Tully, ("Tully Dec."), ¶ 2.) Ty's lead attorney, Mr. Scandaglia, is a co-founder and partner of Scandaglia Ryan and has impressive academic and other credentials, significant litigation experience, and a stellar reputation in the legal community. (*Id.* ¶¶ 3-4.) Ms. Tully is a partner and an experienced litigator who has spent approximately 25 years

representing large companies and other clients in a range of complex commercial cases. (*Id.* ¶¶ 6-7.) Mr. Swee is an associate who served as a law clerk for more than two years and, during his more than three years in private practice, has represented similar clients in similar types of matters. (*Id.* ¶ 9.) Finally, Ms. Waters is an experienced paralegal with decades of experience. (*Id.* ¶ 10.) As further established by the declaration of Ms. Tully and the attorney profiles included in Exhibit 2-C hereto, Ty's attorneys have significant skill and standing consistent with the reasonableness of their rates.

For their work in this matter, the attorneys' and Ms. Waters' billing rates were as follows:

- Gregory Scandaglia: $595 (2019), $610 (2020), $625 (2021)

- Therese Tully: $480 (2019), $500 (2020), $520 (2021)

- Joseph Swee: $325 (2019), $375 (2020), $400 (2021)

- Denise Waters: $240 (2019), $255 (2020), $270 (2021)

(*Id.* ¶¶ 12-15, 17; Ex. 2.) As set forth in Ms. Tully's declaration, these were the standard rates for each timekeeper during the pertinent year. (Ex. 1, Tully Dec., ¶¶ 12-15.) These rates do not exceed the market rates charged by attorneys with comparable skill and credentials in similar commercial litigation matters. (*Id.* ¶ 18.) Scandaglia Ryan regularly charged and collected these standard rates for the work performed by each attorney and paralegal in other matters. (*Id.* ¶ 16.) Ty paid these standard rates for all worked billed by Scandaglia Ryan in connection with this matter. (*Id.* ¶ 18.) Therefore, the billing rates sought in this Motion are reasonable.[8]

---

[8] Notably, Judge Young Kim already has determined in a prior fee award in this matter that Ms. Tully's and Mr. Swee's rates for 2020 were reasonable. (February 26, 2021 Order, Dkt. No. 181 (awarding attorneys' fees to Ty); Ty's Fee Petition, Dkt. No. 180 at 4) (requesting an award based on Ms. Tully's and Mr. Swee's standard rates).

b.  <u>The number of hours worked by Ty's attorneys are reasonable.</u>

Whether the number of hours worked by attorneys is reasonable depends on several factors, including the time and labor required, the novelty and difficulty of the issue, the legal skill required, and the time burdens imposed by the client or the circumstances.  *Lamarr v. Montgomery Lynch & Associates, Inc.*, 2019 WL 912171, at *2 (N.D. Ind. Feb. 25, 2019).  "What qualifies as a 'reasonable' use of a lawyer's time 'is a highly contextual and fact specific enterprise.'"  *Schmalz v. Vill. of N. Riverside*, 2018 WL 11198063, at *2 (N.D. Ill. Dec. 17, 2018) (citation omitted).

The reasonableness of the fees sought by Ty is established by the declaration of Ms. Tully and the billing records attached as Exhibit 2-B.  The contemporaneous billing records document the time for which Ty seeks to recover its attorneys' fees and the specific tasks completed during that time.  These records thus provide an appropriate basis for the award sought in this Motion.

Several circumstances further support the reasonableness of the hours worked by Ty's attorneys.

*First,* the stakes in this matter were significant.  As established above, Ty is entitled to recover damages in excess of $3,800,000 as well as its attorneys' fees.  The damages sought in Ty's complaint were even larger (including treble damages for counterfeiting), although Ty has agreed to limit its requested relief to further an efficient resolution of this matter.  Moreover, through this action, Ty sought to vindicate its rights as the owner of trademarks and copyrights that were improperly utilized by the defendants.  Ty's intellectual property is incredibly valuable and central to its multi-billion-dollar business.  Ty has a considerable interest in ensuing that unlawful use of its intellectual property is challenged and remedied through the legal process.  The significant monetary and other stakes in this matter thus justified a vigorous prosecution by Ty.

16

*Second,* Ty's attorneys implemented appropriate strategies to allocate work in an efficient and cost-effective manner. Litigation tasks were distributed according to the experience level of the attorneys, and Scandaglia Ryan's paralegal and other staff members were deployed appropriately. (Ex. 1, Tully Dec., ¶ 21.) Some tasks required more than one attorney due to the complex nature of the issues or time constraints. (*Id.*) However, Ty's attorneys were careful to avoid duplication. (*Id.*) Care was taken to include attorneys with lower billable rates to perform tasks commensurate with their experience such as research assignments, factual and legal investigations, and drafting the first draft of certain pleadings, motions, and correspondence. (*Id.* ¶ 22.) Through these efforts, Ty's attorneys ensured work was completed in a reasonable and cost-effective manner.

*Third,* the work to be performed by Ty's attorneys was substantially increased by the defendants' litigation tactics and misconduct. Prior to litigation, the defendants rebuffed Ty's efforts to pursue a negotiated resolution of the dispute. After the litigation was filed, the defendants adopted an aggressive defense strategy seemingly designed to force Ty to settle by increasing the cost of litigation. The defendants: (a) filed meritless counterclaims that substantially expanded and increased the cost of discovery (*see* Dkt. No. 22); (b) forced significant motion practice by refusing to correct deficiencies in their responsive pleading (*see* Dkt. No. 60 (granting Ty's Motion to Dismiss and Motion to Strike)) and filing multiple meritless motions (*see* Dkt. Nos. 134, 136 (recommending the denial of the defendants' motions to strike, to dismiss, and for leave to amend); (c) appealed sound rulings by the assigned Magistrate Judge to the assigned District Judge in an ill-founded effort to obtain a different result (*see* Dkt. No. 143 (adopting Judge Kim's Report and Recommendation)); and (d) engaged in substantial discovery misconduct that necessitated motion practice (*see* Dkt. No. 93 (granting in substantial part Ty's Motion to Compel)) and forced Ty to

17

seek discovery from dozens of third parties.  After the withdrawal of their counsel, the defendants essentially abandoned the litigation, forcing Ty to engage in extensive motion practice to seek discovery, sanctions, and eventually entry of default judgments.  (*E.g.*, Dkt. Nos. 172, 177, 183, 186. 198.)  Having substantially caused Ty's attorneys' fees through their approach to and strategy for this litigation, the defendants cannot now complain about those amounts.

*Fourth*, Ty is seeking to recover less than two-thirds of the attorneys' fees that it has paid in connection with the prosecution of this matter.  As noted above, Ty's actual attorneys' fees exceed $1,250,000.  However, Ty has voluntarily excluded from the amount requested in this Motion: (1) all fees incurred prior to the filing of the First Amended Complaint (in which Ty asserted for the first time claims under the Lanham Act, the Copyright Act and the Illinois Consumer Fraud and Deceptive Business Practices Act), (2) all fees incurred after September 30, 2021, including the fees to prepare this Motion,[9] and (3) all fees associated with timekeepers other than the three attorneys and one paralegal identified above.  Ty's voluntary exclusion of such a substantial portion of its attorneys' fees confirms the reasonableness of the amount requested.

For all of these reasons, the Court should award Ty ***$685,862.50*** in attorneys' fees.

### 3.  Bill of Costs

The default judgments entered against the defendants establish that Ty is entitled to recover its costs under Federal Rule of Civil Procedure 54(d)(1), the Lanham Act, and the Copyright Act. In its October 15th Order, the Court stated that Ty may file a bill of costs seeking those amounts. (October 15th Order, Dkt. No. 200.)  Under 28 U.S.C. § 1920, taxable costs include: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily

---

[9] Although fees billed by Scandaglia Ryan after September 30th will be paid by Ty and are recoverable in this matter, the exclusion of those amounts means that all of the fees sought in this Motion already have been paid by Ty.

obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for

exemplification and the costs of making copies of any materials where the copies are necessarily

obtained for use in the case; (5) docket fees under section 1923 of Title 28; and (6) compensation

of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of

special interpretation services under section 1828 of Title 28.  28 U.S.C. § 1920.   As the prevailing

party, Ty thus requests that the Court award Ty's costs in an amount of ***$7,115.24*** as set forth in

the Bill of Costs and supporting documentation attached as Exhibit 3 and the declaration of Ms.

Tully attached as Exhibit 1.

> a.   <u>Filing Fee – $400.00</u>

Section 1920(1) permits recovery of the filing fee paid to initiate an action.  *Am. Safety*

*Cas. Ins. Co. v. City of Waukegan*, 2011 WL 6378817, at \*3 (N.D. Ill. Dec. 20, 2011).  In this case,

the filing fee paid by Ty was $400.  (Ex. 1, Tully Dec., ¶¶ 26-29; Ex. 3-A.)  That amount is

recoverable in full.

> b.   <u>Fees for Service of Summons and Subpoenas – $2,515.00</u>

Section 1920(1) permits recovery of expenses incurred to serve summons or reasonably

necessary subpoenas.  28 U.S.C. § 1920(1); *Am. Safety Cas. Ins. Co. v. City of Waukegan*, 2011

WL 6378817, at \*3 (N.D. Ill. Dec. 20, 2011).  If a party used private process servers, it can recover

the associated expenses to the extent they do not exceed the rates charged by the U.S. Marshal's

service.  *Am. Safety Cas. Ins. Co.*, 2011 WL 6378817, at \*3; *see also Oleksy v. Gen. Elec. Co.*,

2016 WL 7217725, at \*3 (N.D. Ill. Dec. 12, 2016).  During the relevant time period, the U.S.

Marshal's minimum charge per attempted service was $65.  *Sterling Nat'l Bank v. Block*, 2019

WL 5085715, at \*7 (N.D. Ill. Oct. 10, 2019); *see also* 28 C.F.R. § 0.114(3).

<u>Summons.</u>   Ty paid $300 to serve summons and the complaint on each of the three

defendants in this case. (Ex. 3-B.) Ty is entitled to recover the greater of the actual cost of service or $65 for serving each defendant. Ty thus should be awarded $175 for service of summons. (*Id.*)

Subpoenas. In any litigation of this nature, it is necessary and reasonable to serve subpoenas on third parties to obtain relevant evidence. There was a much greater need for Ty to obtain discovery from third parties in this matter because the defendants engaged in a concerted disinformation campaign to mislead Ty and failed to produce critical evidence sought by Ty in discovery. Among other things, the defendants did not produce during discovery: (1) invoices or similar sales documentation for millions of dollars in improper and infringing sales; (2) certain communications with third parties, including customers, regarding improper and infringing sales; and (3) many categories of corporate and financial records relevant to Ty's alter ego claims against the corporate defendants and Mr. Saada. The defendants' misconduct substantially heightened the need for Ty to seek relevant and material evidence through third party discovery, thereby imposing significant expense on Ty. As set forth in the attached declaration of Ms. Tully, Ty reasonably served a total of 39 subpoenas on the defendants' customers, former employees and owners, lenders, accountant, and insurers to obtain relevant information. (Ex. 1, Tully Dec., ¶¶ 30-43; Ex. 3-B.) Ty's total costs for service of these subpoenas was $3,012, and $2,340 of that total is recoverable under Section 1920(1). (*See* Ex. 3-B.)

c. Fees for Exemplification and Copying – $4,200.24

Section 1920(4) permits recovery of fees for printing and copying necessary documents in an action. 28 U.S.C. § 1920(1); *Hillmann v. City of Chicago*, 2017 WL 3521098, at *12 (N.D. Ill. Aug. 16, 2017). As explained in the attached declaration of Ms. Tully, Scandaglia Ryan reasonably and necessarily printed and copied filings, discovery, and other documents in this case. (Ex. 1, Tully Dec., ¶ 45.) Scandaglia Ryan tracked the associated expenses in a log and regularly

20

billed Ty at a reasonable rate for those amounts. (*Id.* at ¶¶ 46-47.) Ty therefore is entitled to recover $4,200.24 in fees for exemplification and copying. (Ex. 1, Tully Dec., ¶¶ 44-50; Ex. 3-C.)

### 4. Form of Judgment

In its October 15th Order, the Court stated that Ty may address the form of the final judgment in this action. (October 15th Order, Dkt. No. 200.) Attached as Exhibit 4 is a proposed final judgment order, which is consistent with the default judgments entered by the Court and the relief sought in this Motion. A Word version of the proposed order has been transmitted to the Court by email as well. Ty requests that the Court enter final judgment substantially in the form of the proposed order.[10]

## <u>CONCLUSION</u>

For the foregoing reasons, Ty requests that the Court grant Ty's Motion for Entry of Final Judgment Against All Defendants, enter final judgment in this matter as set forth above and in the attached proposed order, and grant any such other relief as the Court deems just and appropriate.

---

[10] Because the total amount of the damages is dependent on the amount of additional interest that accrues between the filing of this Motion and the date on which the Court enters final judgment, the proposed order includes a blank line in paragraph 8(a) for the amount of damages.

Dated: November 11, 2021

Respectfully submitted,

/s/ Therese L. Tully
Gregory J. Scandaglia
Therese L. Tully
Joseph R. Swee
SCANDAGLIA RYAN LLP
55 E. Monroe Street, Suite 3440
Chicago, IL 60603
Phone: (312) 580-2020
Fax: (312) 782-3806
Email: gscandaglia@scandagliaryan.com
        ttully@scandagliaryan.com
        jswee@scandagliaryan.com

*Attorneys for Plaintiff Ty Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that, on November 11, 2021, a copy of the foregoing

**Plaintiff Ty Inc.'s Motion for Entry of Final Judgment Against All Defendants** was served on

all parties by U.S. Mail and e-mail at the addresses listed below:

| **Esquire Licensing LLC** | **Esquire Footwear LLC** | **Isaac Saada** |
|---|---|---|
| Attn: Isaac Saada | Attn: Isaac Saada | 385 5th Avenue |
| 385 5th Avenue | 385 5th Avenue | 2nd Floor |
| 2nd Floor | 2nd Floor | New York, NY 10016 |
| New York, NY 10016 | New York, NY 10016 | |
| isaacsaada@yahoo.com | isaacsaada@yahoo.com | 730 Avenue O |
| isaada@esquirebrands.com | isaada@esquirebrands.com | Brooklyn, NY 11230 |
| | | |
| | | isaacsaada@yahoo.com |
| | | isaada@esquirebrands.com |

Dated: November 11, 2021          /s/ Therese L. Tully
                                            SCANDAGLIA RYAN LLP
                                            55 E. Monroe Street, Suite 3440
                                            Chicago, IL 60603
                                            Phone: (312) 580-2020
                                            Fax: (312) 782-3806
                                            ttully@scandagliaryan.com

                                            *Attorney for Plaintiff Ty Inc.*